### JAMES ROEBUCK v. THE STATE.

No. 1786. Decided June 14, 1899.

**1. Theft—Circumstantial Evidence—Charge of Court.**

On a trial for theft in a case purely of circumstantial evidence, a charge of court which instructed the jury only on that phase of the case, that "the ownership of property as alleged may be shown by circumstances, provided the same are sufficient to satisfy the jury beyond a reasonable doubt that the same belonged to the alleged owner," is insufficient. The court should have submitted a full and complete instruction upon this phase of the law.

**2. Theft of Hog—Evidence Insufficient.**

See evidence, on a trial for hog-theft, held insufficient to establish the identity of the alleged stolen animal as the hog of the prosecutor.

APPEAL from the District Court of Newton. Tried below before Hon. STEPHEN P. WEST.

Appeal from a conviction of theft of a hog; penalty, two years imprisonment in the penitentiary.

The indictment charged appellant with the theft of a hog, the property of Belda Jenkins.

Belda Jenkins testified that a bunch of her hogs strayed off in 1898, and all came back but two or three, and she "could never get any hearing from them." One of these was a black sow with about half a stocking on one fore leg; and it was marked with a crop and a half crop in its right ear, and an underbit in its left ear. She says that "Word was sent me that one of my hogs was killed near Salem, and I think little Jeff West sent me word by one of Nelson Levia's boys. I did not go to look for it myself, and don't remember the time."

Tony West testified that he heard a gunshot, a squeal, and dogs bark. That afterwards he passed defendant's house, and he was scraping a hog in the back yard. He went on and got several neighbors and went back to defendant's; went to his smokehouse, and examined a hog which was cut up. He knew Belda Jenkins' hog mark. Found that the mark upon the ears of the hog they had examined had been altered. The hog found in the defendant's smokehouse was a bob-tailed hog. He had fed a hog in Belda's mark, which he had never seen since he examined the one at the defendant's smokehouse. Describing the alteration in the marks upon the hog he examined, he says: "A crop and half crop would be changed to a crop by cutting off the upper half, and this is the way I found this cut. I don't know of anyone but Belda giving that mark, and never saw any other hog in that mark." On redirect examination, he stated that he only saw the hog at a distance when he first saw defendant cleaning it. "I judge from the head that it compared very well with Belda's. It was a sandy and black spotted, very fine spots. Some would call it a speckled hog, and corresponded with Belda's in color." The hair he saw at night when they went to defendant's to examine the hog "was red and black."

John West testified he was one of the parties who examined the hog at defendant's house. "It was marked with underbit in the left ear and crop off the right ear. A part of the mark was old and part was new." Knew Belda's mark, but did not know her hogs.

Defendant proved that he had bought all the hogs belonging to one Hamlet, and some of the hogs of one Ashworth. He testified that the hog he killed was marked a crop off the right ear, and was one of the hogs he bought from Hamlet, and was in Ashworth's mark. That it was a sandy-spotted sow.

Tom Holmes, Sr., testified that defendant's general reputation was bad.

T. T. Howard, deputy sheriff, testified he had a capias for the arrest of defendant; kept a lookout for him; couldn't find him. His neighbors said he was gone. "Defendant was arrested in Louisiana two or three weeks ago."

No brief for appellant has come to the hands of the Reporter.

*Robt. A. John*, Assistant Attorney-General, for the State.

BROOKS, JUDGE.—Appellant was convicted of the theft of a hog, and his punishment assessed at two years confinement in the penitentiary. Appellant complains of the following portion of the charge of the court, to wit: "The ownership of property as alleged may be shown by circumstances, provided same are sufficient to satisfy the jury beyond a reasonable doubt that the same belonged to the alleged owner." This is a case of purely circumstantial evidence, and we think the court should have given a full and complete charge upon this phase of the law. It has been repeatedly held that, where the evidence is circumstantial, it is the imperative duty of the court to charge upon the law of circumstantial evidence. Burrell v. State, 18 Texas, 713; Howell v. State, 16 Texas Crim. App., 93; Crowell v. State, 24 Texas Crim. App., 404. The case nearest analogous to this one is Bryant v. State, 16 Texas Criminal Appeals, 149. The charge there on circumstantial evidence was as follows: "In order to convict on circumstantial evidence, the circumstances must be so connected as to exclude every reasonable hypothesis but the guilt of defendant." The charge was excepted to because not sufficiently full and specific to enable the jury to understand and apply the rules applicable to circumstantial evidence. We there held the exception well taken. Nor do we think the charge in this case sufficient upon this phase of the law. The books are replete with indorsements of charges on circumstantial evidence, and it is not necessary for us here to say how the charge should be worded. We do not think the evidence is sufficient on the question of the identity of the hog as being the hog of the prosecuting witness. Because the court failed to charge on circumstantial evidence, and because of the lack of sufficient proof of identity as above indicated, the judgment is reversed, and the cause remanded.

*Reversed and remanded.*